UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF GEORGIA

STATESBORO DIVISION

CHARLES R. RANKIN,                )
                                  )
    Plaintiff,                    )
                                  )
v.                                )     CV616-147
                                  )
BOARD OF REGENTS OF THE           )
UNIVERSITY SYSTEM OF              )
GEORGIA, a State Agency,          )
CHIEF LAURA MCCULLOUGH,           )
in her official and individual    )
capacities, *et al.*,             )
                                  )
    Defendants.                   )

## ORDER

Plaintiff Charles Rankin brings this § 1983 action alleging that the defendants violated his rights when he was arrested after an altercation. *See* doc. 10 (Amended Complaint). Defendants have moved to dismiss and to stay discovery pending disposition of that motion. Docs. 8 & 16.

I.   BACKGROUND

Rankin, who is a Corporal in the Georgia State Patrol, went to "a friend's gathering" near Paulson Stadium at Georgia Southern

University.[1] Doc. 10, ¶¶ 17, 23, 26. He got into a scuffle, and defendants Harry Jones and Kate Sullivan, Georgia Southern University Police Department (GSUPD) officers, arrested him. *Id.* ¶¶ 35-38, 40, 65. They transported him to the Bulloch County Jail, where he was booked on a charge of affray under O.C.G.A. § 16-11-32. *Id.* ¶ 47. Rankin claims that because he lacked the requisite intent his arrest was without probable cause, in violation of his Fourth Amendment rights. *Id.* ¶¶ 60, 65, 67. His subsequent detention, therefore, constituted false arrest ("Count I") and false imprisonment ("Count II"). *Id.* ¶¶ 64-76.

Rankin was released from jail, but sometime later defendant Terry Briley, a Captain in the GSUPD, obtained a warrant for his arrest. Doc. 10, ¶ 50. He surrendered and was rebooked. *Id.* ¶ 54. The warrant, he contends, was issued without probable cause. *Id.* ¶¶ 78-82. Accordingly, defendants Laura McCullough, Chief of the GSUPD, and Briley engaged in malicious prosecution in procuring and serving that warrant, a second violation of his Fourth Amendment rights.[2] *Id.* ¶¶ 83-87. Finally,

---

[1] For purposes of this Order only, the Court accepts the factual allegations of the Amended Complaint as true.

[2] As defendants point out, the Amended Complaint includes no factual allegations concerning McCullough's participation in securing the warrant. Doc. 16-1 at 14 n. 7.

2

McCullough "adopted or maintained" various "policies or customs" constituting "a deliberate indifference . . . to the constitutional rights of citizens, and [which] contributed to the violation" of Rankin's rights. *Id.* ¶¶89-97.

## II. ANALYSIS

Each of the defendants discussed above is sued in his or her official and individual capacities.³ *See* doc. 10 ¶¶ 5-8. They move to dismiss the Amended Complaint, arguing that any claims against them in their official capacities are barred by the Eleventh Amendment and that, in their official capacities, they are not "persons" subject to § 1983 liability. Doc. 16 at 5-7. Further, they argue that the Amended Complaint fails to state claims against them in their individual capacities, or, alternatively, that they are entitled to qualified immunity. *Id.* at 7-24.

---

Whether the lack of any such allegation requires the dismissal of Rankin's malicious prosecution claim against Chief McCullough is before the District Judge.

³ The Board of Regents of the University System of Georgia continues to appear in the caption and jurisdictional allegations of the Amended Complaint. *See* doc. 10, ¶¶ 2-4. However, it does not figure in any of Rankin's subsequent allegations, *see generally id.*, and he concedes that his claims against it are barred by the Eleventh Amendment. *See* doc. 11 at 1 n.1; *see also* note 4 *infra*. Hence, it is due to be dismissed from this case.

Defendants have also moved to stay discovery pending the resolution of their motion to dismiss. Doc. 8. The parties agree that a stay of discovery "as to the 11th Amendment subject matter jurisdictional issues" is appropriate.[4] Doc. 12 at 2 n. 1. Defendants argue that any other discovery should be stayed, among other arguments, because they have asserted a qualified-immunity defense. Doc. 8 at 3-5; doc. 15 at 2. Plaintiff disagrees and wants to do discovery on his remaining claims. Doc. 12 at 2-3.

In evaluating stays of discovery pending resolution of dispositive motions, "a court must take a 'preliminary peek' . . . to assess the likelihood that the motion will be granted." *Taylor v. Jackson*, 2017 WL 71654 at * 1 n. 2 (S.D. Ga. Jan. 6, 2017) (quoting *Sams v. GA West Gate,*

---

[4] Plaintiff's concessions concerning defendants' assertion of Eleventh Amendment immunity are somewhat confused. As defendants point out, Rankin's Amended Complaint names the Board and the individual defendants in their official capacities. *See* doc. 15 at 2 (citing doc. 10, *caption*, ¶¶ 2, 5, 6, 7, 8, and 10). However, his response to defendants' motion to dismiss the original Complaint concedes that "the claims against the Board of Regents and 'official capacity' claims are barred from suit under the 11th Amendment, and no actionable *respondeat superior* liability exists." Doc. 11 at 1 n. 1. The recognition that the Board, and the individual defendants in their official capacities, enjoy immunity from suit would seem to moot the question of whether discovery should be stayed. *See also* doc. 12 at 2 n. 1 (conceding discovery stay on Eleventh Amendment issues). However, Rankin has not withdrawn those claims. So, they remain, along with the determination of defendants' qualified immunity, before the district judge.

4

*LLC*, 2016 WL 3339764 at * 6 (S.D. Ga. June 10, 2016). The Court will do so here.

"Because qualified immunity is an entitlement not to stand trial or face the other burdens of litigation, [cit.], questions of qualified immunity must be resolved at the earliest possible stage in litigation." *Gonzalez v. Reno*, 325 F.3d 1228, 1233 (11th Cir. 2003). One aspect of the immunity is that it frees "officials from the concerns of litigation, *including avoidance of disruptive discovery.*" *Ashcroft v. Iqbal*, 556 U.S. 662, 685 (2009) (quotes and cite omitted). It protects "all but the plainly incompetent or those who knowingly violate the law," that is those who violate a "clearly established" right or law. *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (quotes and cite omitted). The Supreme Court has "repeatedly told courts not to define clearly established law at a high level of generality." *Id.* (quotes, cite, and alteration omitted). "The dispositive question is whether the violative nature of *particular* conduct is clearly established." *Id.* (quotes and cite omitted).

Defendants argue that even under the charitable motion-to-dismiss standard, Rankin's contentions concerning his intent, or lack of it, do not preclude probable cause for either of his arrests. *See* doc. 16-1 at 11-15.

Further, a failure to sufficiently allege facts demonstrating the lack of probable cause would doom his false arrest, false imprisonment, and malicious prosecution claims. *Id.* at 13, 15, 18. And if he has failed to allege any underlying constitutional violation, his claim against McCullogh, based on GSUPD's policies and procedures, also fails. *Id.* at 19. Finally, defendants contend, if the district judge found probable cause for his arrests was even arguable, they would be protected by qualified immunity. *Id.* at 22-24. Thus even if the district judge found Rankin had sufficiently alleged lack of probable cause, qualified immunity would still require dismissal if he finds that it is even arguable.

Defendants' arguments have legs. There is a distinct possibility that the district judge will find either that the Amended Complaint fails to sufficiently allege facts showing a lack of probable cause, or that the existence of arguable probable cause requires dismissal on qualified immunity grounds. In either case, both parties would have wasted time and resources pursuing discovery.[5] To preserve the full protection

---

[5] Rankin states, without explanation, that a stay would "prejudice ... [his] ability to more fully investigate his claims." Doc. 12 at 3. Of course it would. But the Court will do him no favor by sanctioning discovery on doomed claims.

6

conferred by qualified immunity, then, the Court stays discovery is until the district judge resolves the Motion to Dismiss.

## III. CONCLUSION

The Court **GRANTS** defendants' motion to stay pending disposition of their motion to dismiss. Doc. 8.

**SO ORDERED**, this __8th__ day of February, 2017.

*/s/ G.R. Smith*
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA